1

2

3

4

5

6

7

8

9

10

11

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF WASHINGTON**

12

LALTITUDE LLC,

13

              Plaintiff,

Civ. Case No. 25-cv-1961

14

    v.

COMPLAINT FOR DAMAGES AND
INJUNCTIVE RELIEF

15

16

THE INDIVIDUALS, PARTNERSHIPS,
AND UNINCORPORATED
ASSOCIATIONS IDENTIFIED IN

17

SCHEDULE "A",

Jury Trial Demanded

18

           Defendants.

19

20

LALTITUDE LLC, d/b/a PicassoTiles (referred to hereinafter as "Laltitude" or

21

"Plaintiff"), hereby sues the foreign-based individuals, partnerships, and unincorporated

22

associations identified in Schedule "A" hereto (collectively referred to hereinafter as

23

"Defendants").

24

Defendants, through online commerce platforms including without limitation Amazon.com

25

(collectively, "Online Marketplaces"), have infringed, and continue to infringe Plaintiff's United

26

States Design Patent No. D789,312 F3 (the "D312 Patent" as further defined below) by

1

Practus LLP
11300       Tomahawk
Creek  Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1    manufacturing, distributing, importing, offering for sale, and/or selling magnetic bricks in

2    violation of 35 U.S.C. § 271 (collectively, "Patent Infringement").

3        In support of its claims, Plaintiff alleges as follows:

4                                    **PARTIES**

5        1.    Plaintiff, Laltitude, is a Limited Liability Company organized under the laws of the

6    State of California and having its principal place of business at 17128 Colima Road, Hacienda

7    Heights, California 91745.

8        2.    Plaintiff is the owner and sole authorized manufacturer of products embodying the

9    D312 Patent under the brand names "PicassoTiles" or "Everplay."

10       3.    Defendants are individuals, partnerships, unincorporated associations, and/or

11   business entities of unknown makeup, each of whom, upon information and belief, reside or

12   operate in foreign jurisdictions and manufacture, distribute, import, offer for sale, and/or sell

13   products, including Defendants' Products, from the same or similar sources in those foreign

14   locations. As stated above, Defendants and any known aliases are identified in Schedule "A"

15   attached hereto and incorporated here.

16       4.    Upon and information and belief, and as set forth more fully in the declaration of

17   Howard Wang accompanying the *ex parte* Emergency Motion for Temporary Restraining Order

18   ("TRO"), each of the Defendants identified in Schedule A are believed to be owned and controlled

19   by the same entity and/or obtain their product from the same manufacturer and/or source.

20       5.    Upon information and belief, all Defendants are related and/or affiliated individuals

21   or companies or offer for sale, sell, manufacture, and/or use infringing products from the same

22   original equipment manufacturer ("OEM") to collectively and/or individually engage in the illegal

23   conduct alleged herein, and have enriched themselves, while Plaintiff has suffered enormous

24   financial injury.  For example, Plaintiff has purchased products offered for sale and sold in this

25   judicial district by each of the above-named defendants and has come to learn from their product

26   packaging that their infringing products are all manufactured at the same factory: Shenzhen

Case No. 25-cv-1961                              2

Practus LLP
11300    Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1  Yingchuan Technology Co., Ltd. *Compare* Exhibit G at Appendix 1, p. 9 *with* Appendix 2, p. 7

2  *with* Appendix 3, p. 9 *with* Appendix 4, p. 9 *with* Appendix 6, p. 9 *with* Appendix 7, p. 9 *with*

3  Appendix 8, p. 9 *with* Appendix 9, p. 9 *with* Appendix 10, p. 9 *with* Appendix 11, p. 9 *with*

4  Appendix 12, p. 9.

5        6.      Defendants' Products have traveled and do travel in interstate commerce.

6        7.      As set forth below, Defendants have the capacity to be sued pursuant to Federal

7  Rule of Civil Procedure 17(b).

8  **NATURE OF THE ACTION**

9        8.      This action involves claims for patent infringement under 35 U.S.C. §§ 271 *et seq*.

10  arising from the infringement of the D312 Patents, including, without limitation, by

11  manufacturing, advertising, marketing, promoting, distributing, making, using, offering for sale,

12  selling and/or importing into the United States for subsequent sale or use, of unlicensed

13  Defendants' Products that copy Plaintiff's D312 Patented technologies and infringe the D312

14  Patent.

15  **JURISDICTION AND VENUE**

16        9.      This Court has federal subject matter jurisdiction over the claims asserted in this

17  Action pursuant to 28 U.S.C. §§ 1331 and 1338(a), as well as pursuant to 28 U.S.C. § 1338(a) as

18  an action arising out of violations of the Patent Act; pursuant to 28 U.S.C. § 1332, as there is

19  diversity between the parties and the matter in controversy exceeds, exclusive of interests and

20  costs, the sum of seventy-five thousand dollars.

21        10.      Personal jurisdiction exists over Defendants in Washington, including this district,

22  pursuant to Washington's Long-Arm Statute, RCW 4.28.185, or in the alternative, Federal Rule of

23  Civil Procedure 4(k), because, upon information and belief, Defendants regularly conduct, transact

24  and/or solicit business in Washington, and/or derive substantial revenues from their business

25  transactions in Washington and/or otherwise avails themselves of the privileges and protections of

26  the laws of the State of Washington such that this Court's assertion of jurisdiction over Defendants

Practus LLP
11300    Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1    does not offend traditional notions of fair play and due process, and/or Defendants' illegal

2    infringing actions caused injury to Plaintiff in Washington such that Defendants should reasonably

3    expect such actions to have consequences in Washington. For example:

4        a.    Defendants systematically direct and target business activities at consumers and

5              businesses in the United States, including Washington, through User Accounts they

6              maintain on Amazon.com, which, upon information and belief, operate within the

7              state of Washington;

8        b.    Upon information and belief, Defendants were and/or are systematically directing

9              and/or targeting its business activities at consumers in the U.S., including

10             Washington, through User Accounts with online marketplace platforms such as

11             Walmart.com, Target.com, and Amazon.com, as well as any and all as yet

12             undiscovered User Accounts, through which consumers in the U.S., including

13             Washington, can view Defendants' Merchant Storefronts that Defendants operate,

14             use to communicate with consumers regarding their listings of infringing

15             Defendants' Products and to place orders for, receive invoices for, and purchase

16             Defendants' Products for delivery in the U.S., including Washington, as a means

17             for establishing regular business with the U.S., including Washington.

18       c.    Upon information and belief, Defendants are sophisticated sellers, operating one or

19             more commercial businesses through their User Accounts, using their Merchant

20             Storefronts and Defendants' Website to manufacture, import, export, advertise,

21             market, promote, distribute, make, use, offer for sale, sell and/or otherwise deal in

22             products, including Infringing Products at significantly below-market prices to

23             consumers worldwide, including to those in the U.S., and specifically Washington.

24       d.    Upon information and belief, Defendants accept payment in U.S. Dollars and offers

25             shipping to the U.S., including to Washington, and specifically to PO BOX 23063,

26             SEATTLE, WA 98102-0363. *See* Exhibit G at Appendix 14.

Case No. 25-cv-1961                                4

Practus LLP
11300    Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

e.  Upon information and belief, Defendants have transacted business with consumers located in the U.S., including Washington, for the sale and shipment of Defendants' Products. *See* Exhibit G at Appendix 14.

f.  Upon information and belief, Defendants maintain accounts with funds at least for their infringing Amazon.com sales activities, wherein such accounts are maintained in the state of Washington under the custody of Amazon.com, Inc. (the "Amazon" entity).

g.  Upon information and belief, Defendants are aware of Plaintiff, Plaintiff's D312 Patented products sold under the brand names "PicassoTiles" and "Everplay", and is aware that its illegal, infringing actions alleged herein are likely to cause and have caused continued injury to Plaintiff in the U.S., and specifically in Washington.

11.  Further, each of the Defendants have agreed to the Amazon.com Conditions of Use, which state, "Any dispute or claim relating in any way to your use of any Amazon Service will be adjudicated in the state or Federal courts in King County, Washington, and you consent to exclusive jurisdiction and venue in these courts." https://www.amazon.com/gp/help/customer/display.html?nodeId=GLSBYFE9MGKKQ XXM. Thus, each Defendant has contracted with residents of this judicial district, including residents at Amazon.com and Amazon.com the corporate resident, through and by virtue of their operations on the Online Marketplaces, in particular, Amazon.com.

12.  Venue is proper under *inter alia* U.S.C. § 1391 because, upon information and belief, Defendants conduct, transact, and/or solicit business in Washington state, including within this judicial district.

/ / /

/ / /

/ / /

Practus LLP
11300    Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1                                    **THE D312 PATENT**

2          13.      On June 13, 2017, the United States Patent and Trademark Office ("USPTO") duly

3    and legally issued United States Design Patent No. D789,312 S1, entitled "Single Magnetic Brick,"

4    to Howard Wang (the "D312 Patent").

5          14.      Plaintiff is the named assignee of, owns all right, title, and interest in, and has

6    standing to sue for infringement of the D312 Patent. A copy of the D312 Patent is attached hereto

7    as Exhibit A..

8          15.      On January 8, 2025, the USPTO certified the D312 Patent as patentable over several

9    newly discovered pieces of prior art, all of which the USPTO determined did not raise a substantial

10   new question of patentability as to the D312 Patent claim. A copy of the January 8, 2025,

11   Supplemental Examination Certificate in USPTO Control No. 96/050,061 is attached hereto as

12   Exhibit B..

13         16.      On January 8, 2025, the USPTO also certified the D312 Patent as patentable over

14   other newly discovered pieces of prior art, all of which the USPTO determined did not raise a

15   substantial new question of patentability as to the D312 Patent claim. A copy of the January 8,

16   2025, Supplemental Examination Certificate in USPTO Control No. 96/050,062 is attached hereto

17   as Exhibit C..

18         17.      On April 2, 2025, the USPTO yet again certified the D312 Patent as patentable over

19   additional pieces of prior art, all of which the USPTO again determined did not raise a substantial

20   new question of patentability as to the D312 Patent claim. A copy of the April 2, 2025,

21   Supplemental Examination Certificate in USPTO Control No. 96/050,079 is attached hereto as

22   Exhibit D..

23         18.      As the USPTO has found on four (4) separate occasions, the D312 Patent is directed

24   to a clearly unique ornamental design for a single magnetic brick, as shown and described in the

25   seven figures of the D312 Patent, which are reproduced below:

26

Practus LLP
11300      Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20



FIG. 1

FIG. 2

FIG. 6

FIG. 7

FIG. 3

FIG. 4     FIG. 5

21     19.     No license or other rights to the D312 Patent has been granted to any Defendant in

22     this action.

23     20.     Plaintiff has provided constructive notice of the D312 Patent as required by 35

24     U.S.C. § 287.

25     21.     Plaintiff currently sells products and offers products for sale that embody the

26     innovative D312 Patented designs on Amazon.com, Walmart.com, Target.com, BJ's Wholesale

Practus LLP
11300        Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1   Price Club, Oriental Trading, Michaels Stores, and via its own website, www. Picassotiles.com.

2   As illustrated in the chart below of Plaintiff's square magnetic brick product, the PicassoTiles

3   product utilizes the ornamental design claimed in the D312 Patent:



| U.S. Design Patent No. D789,312 S | PicassoTiles Product No. 043 |
|---|---|
| Claim: The ornamental design for a single magnetic brick, as shown and described. | |
| Fig. 1 | |
| Figs. 2, 3 | |
| Figs. 4-7 | |

22.   Starting in 2015, Plaintiff used the D312 Patent to achieve gross revenues slightly

below $1 million, and each year thereafter, has consistently utilized the D312 Patent to achieve

gross revenues in the mid to high multiple millions of dollars.

Practus LLP
11300    Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

Case No. 25-cv-1961

1  23.  Plaintiff's sale and exploitation of the D312 Patented design has been an

2  overwhelming commercial success and has created a new paradigm for the magnetic building brick

3  toy industry.

4  24.  In the wake of Plaintiff's massive commercial success and market share,

5  especially on web-based marketplaces such as Amazon.com where it is the number 1 best seller of

6  magnetic brick products, many competitors entering the marketplace for magnetic toy products

7  have chosen to copy Plaintiff's D312 Patent and its commercially successful and innovative D312

8  Patented designs to try and compete with Plaintiff and erode its prices to lure Plaintiff's customers

9  away with inferior knock-offs.

10  **DEFENDANTS' WILLFUL PATENT INFRINGEMENTS**

11  **Patent Enforcement Against Online Marketplace Infringers**

12  **Using Amazon, TikTok Shop, and AliExpress**

13  25.  AliExpress is an online marketplace and e-commerce platform that allows

14  manufacturers, wholesalers and other third-party merchants, like Defendants, to advertise,

15  distribute, offer for sale, sell and ship their wholesale and retail products originating from China

16  directly to consumers worldwide and specifically to consumers residing in the U.S., including

17  Washington.

18  26.  As a leader in China's e-commerce and digital retail market, AliExpress has

19  generated hundreds of billions in sales worldwide, and in the recent fiscal year ending March 31,

20  2024, generated $130.35 billion.[1] International markets, including the U.S., make up a significant

21  percentage of sales made on AliExpress. For example, in 2016, revenue from international retail

22  sales grew by 25% on AliExpress to $342 million and 15% on Alibaba to $841 million.[2]

23  _____

24  [1] *See* Xin Ou, *Annual Revenue of Alibaba Group From Financial Year 2014 To 2024*, STATISTA (Jun. 14, 2024), https://www.statista.com/statistics/225614/net-revenue-of-alibaba/; Kenneth Rapoza, *Jack Ma's Alibaba Promises Huge Sales Boom, $910 Billion In Merchandise Volume By 2020*, FORBES (Jun. 15, 2016),

25  http://www.forbes.com/sites/kenrapoza/2016/06/15/jack-ma-foretells-huge-sales-boom-for-chinese-e-commercegiant- alibaba/#78d364486b52.

26  [2] *See* Frank Tong, *Alibaba's annual web sales easily surpass U.S. e-retail sales,* DIGITALCOMMERCE360.COM

Case No. 25-cv-1961     9

Practus LLP
11300   Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1    27.    The press reported that the growth in sales on AliExpress resulted from an increase

2    in the number of buyers, particularly from the U.S. and Europe.[3]

3    28.    As addressed in the Wall Street Journal, Fortune and the New York Times,[4] and as

4    reflected in the federal lawsuits filed against sellers offering for sale and selling infringing and/or

5    counterfeit products on Alibaba.com and AliExpress,[5] an astronomical number of counterfeit and

6    infringing products are offered for sale and sold on Alibaba.com and AliExpress, as well as other

7    online marketplace platforms, at a rampant rate.

8    29.    Additionally, the Office of the United States Trade Representative ("USTR")

9    publishes an annual "Notorious Markets List" which highlights specific physical and online

10   markets around the world that are reported to be engaging in and facilitating substantial copyright

11   piracy and trademark counterfeiting, and which is intended to help the U.S. and foreign

12   governments prioritize intellectual property rights (IPR) enforcement that protects job-supporting

13   innovation and creativity in the U.S. and around the world.[6]

14   _____

     (May 5, 2016), https://www.internetretailer.com/2016/05/05/alibabas-annual-web-sales-easily-surpass-us-e-retail-
15   sales.

     [3] *See* Evelyn Cheng, *China's Alibaba is courting European and U.S. small businesses as it goes global,* CNBC
16   (Jun. 6, 2024), https://www.cnbc.com/2024/06/06/chinas-alibaba-woos-european-us-small-businesses-as-it-goes-
     global.html.

17   [4] See Kathy Chu, Alibaba Vows Crackdown on Fakes Amid Trade Group Controversy, WALL STREET
18   JOURNAL (May13, 2016), http://www.wsj.com/articles/alibaba-vows-crackdown-on-fakes-amid-trade-group-
     controversy-1463127605?; Scott Cendrowski, Chinese Regulator Again Calls Out Alibaba for Counterfeit Goods,
19   FORTUNE (Aug.10, 2016), http://fortune.com/2016/08/11/alibaba-counterfeit-goods-regulator/; see also Kathy
     Chu, Alibaba Suspends From Anticounterfeiting Group, WALL STREET JOURNAL (May 13, 2016),
20   http://www.wsj.com/articles/alibabasuspended-from-anticounterfeiting-group-1463170527?tesla=y; Michael
     Schuman, A Small Table Maker Takes On Alibaba's Flood of Fakes, N.Y. TIMES (Mar. 18, 2017),
21   https://www.nytimes.com/2017/03/18/business/alibaba-fakemerchandise-e-commerce.html.

     [5] See Kathy Chu, Luxury brands get tougher with counterfeiters – and Alibaba, MARKETWATCH (Aug. 16,
22   2016), http://www.marketwatch.com/story/luxury-brands-get-tough-with-counterfeiters-2016-08-16-91031611;
     Gilian Wong, Alibaba Sued Over Alleged Counterfeits, WALL STREET JOURNAL (May 17, 2015),
23   http://www.wsj.com/articles/alibaba-sued-over-alleged-counterfeits-1431877734; Scott Cendrowski, There's no end
     in sight for Alibaba's counterfeit problem, FORTUNE (May 18, 2015), http://fortune.com/2015/05/18/theres-no-
24   end-insight-for-alibabas-counterfeit-problem/.

25   [6] See Press Release, Office of the United States Trade Representative, USTR Releases 2023 Review of Notorious
     Markets for Counterfeiting and Piracy (Jan. 2024), available at https://ustr.gov/about-us/policy-offices/pressoffice/
26   press-releases/2024/january/ustr-releases-2023-review-notorious-markets-counterfeiting-and-piracy; Office of The
     United States Trade Representative, 2023 Review of Notorious Markets for Counterfeiting and Piracy (2023),

Case No. 25-cv-1961                                    10

Practus LLP
11300    Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1    30.    In February of 2022, the Office of the United States Trade Representative

2    ("USTR") added AliExpress to its list of 2021 "notorious markets", which are "markets that

3    reportedly facilitate substantial trademark counterfeiting."[7]

4    31.    On January 31, 2023, the USTR released its 2022 Review of Notorious Markets for

5    Counterfeiting and Piracy, and AliExpress was again designated a "notorious market".[8] The USTR

6    specifically noted that a "key concern of right holders is that penalties for repeat infringers do not

7    stop counterfeit sellers on AliExpress from remaining on the market, such as by operating multiple

8    accounts.[9]

9    32.    Amazon is an online marketplace and e-commerce platform that allows

10    manufacturers, wholesalers, and other third-party merchants, like Defendants, to advertise,

11    distribute, offer for sale, sell and ship their wholesale and retail products originating from China[10]

12    directly to consumers worldwide and specifically to consumers residing in the U.S., including

13    Washington.

14    33.    Amazon is recognized as one of the leaders of the worldwide e-commerce and

15    digital retail market and the company's net sales were $169.9 billion in the fourth quarter of 2023.[11]

16    Sales to the U.S. make up a significant percentage of the business done on Amazon.[12] As of

17

---

18    available at https://ustr.gov/sites/default/files/2023_Review_of_Notorious_Markets_for_Counterfeiting_and
19    _Piracy_Notorious_ Markets_List_final.pdf.

[7] Michelle Toh, The US accuses Tencent and Alibaba of letting sellers traffic fake goods, CNN (Feb. 18, 2022)
20    https://www.cnn.com/2022/02/17/business/china-tencent-alibaba-notorious-markets-list-intl-hnk/index.html.

[8] USTR Releases 2022 Review of Notorious Markets for Counterfeiting and Piracy, OFFICE OF THE UNITED
21    STATES TRADE REPRESENTATIVE (Jan. 31, 2023), https://ustr.gov/about-us/policy-offices/press-
office/pressreleases/2023/january/ustr-releases-2022-review-notorious-markets-counterfeiting-and-piracy.
22
[9] Id. at note 8.

23    [10] See Juozas Kaziukenas, Chinese Sellers Are Building Brands on Amazon, MARKETPLACE PULSE (Dec. 6,
2018), https://www.marketplacepulse.com/articles/chinese-sellers-are-building-brands-on-amazon.
24
[11]  Amazon's Record Earnings in 2023 Propelled by Strong Fourth-Quarter Results, MSN (Mar. 8, 2024),
25    www.msn.com/en-us/money/companies/amazon-s-record-earnings-in-2023-propelled-by-strong-fourth
quarterresults/ar-BB1ijMBv.

26    [12] See Amazon.com, Inc., Quarterly Results Q4 Earnings (Form 10-K) (Feb. 1, 2024).

Case No. 25-cv-1961                              11

Practus LLP
11300      Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1   September 27, 2023, Amazon had a market capitalization of $1.84 trillion, making it the fourth

2   most valuable company in the U.S.[13]

3        34.    Many of the third-party merchants that have user accounts and operate merchant

4   storefronts on Amazon are located in China. These third-party merchants recently accounted for

5   nearly half of all businesses on Amazon.[14]

6        35.    In Q4 of 2023, third party merchants generated $43.56 billion, accounting for 61%

7   of Amazon's sales.[15]

8        36.    Amazon aggressively uses the Internet and television to market itself and the

9   products offered for sale and/or sold by its third-party merchant users to potential consumers,

10  particularly in the U.S. In 2023 alone, Amazon spent $44.4 billion on marketing, up from $42.3

11  billion the previous year.[16]

12       37.    As reflected in the federal lawsuits filed against third-party merchants offering for

13  sale and selling infringing and/or counterfeit products on [17]Amazon, and as recently addressed in

14

15

16

17
_____

18  [13] STOCK ANALYSIS (last visited Mar. 8, 2024), https://stockanalysis.com/stocks/amzn/market-cap/.

[14] John Herrman, *The Junkification of Amazon Why does it feel like the company is making itself worse?*, NEW
19  YORK MAGAZINE (Jan. 30, 2023), https://nymag.com/intelligencer/2023/01/why-does-it-feel-like-amazon-is-making-itselfworse.html.

20  [15] Daniela Coppola, *Quarterly value of Amazon third-party seller services 2017-2023,* STATISTA (Feb 8, 2024),
    https://www.statista.com/statistics/1240236/amazon-third-party-seller-
21  servicesvalue/#:~:text=Amazon%27s%20net%20sales%20generated%20through%20its%20thirdparty%
    20seller,fees%20and%20other%20services%20related%20to%20third-party%20sellers.

22
    [16] Daniela Coppola, *Worldwide Amazon marketing expenditure 2010-2023,* STATISTA (Feb 8, 2024),
23  https://www.statista.com/statistics/506535/amazon-
    marketingspending/#:~:text=In%20the%20fiscal%20year%202023%2C%20Amazon%E2%80%99s%20marketing
24  %20spending,42.3%20billion%20U.S.%20dollars%20in%20the%20previous%20year, Daniela Coppola, Share of
    paid units sold by third-party sellers on Amazon platform from 2nd quarter 2007 to 4th quarter 2023, STATISTA
25  (Feb 8, 2024), https://www.statista.com/statistics/259782/third-party-seller-share-of-amazon-platform/.

[17] *See, e.g., Apple Inc. v. Mobile Star LLC,* No. C17-1120 RAJ (W.D. Cal. Aug. 4, 2017) and *Diamler AG v.*
26  *Amazon.com, Inc.*, 16-cv-00518-RSM (W.D. Wash. Mar. 11, 2019).

Case No. 25-cv-1961

12

Practus LLP
11300    Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1    news reports, an astronomical number of counterfeit and infringing products are offered for sale

2    and sold on Amazon at a rampant ⌞OBJ⌟[18][19]

3          38.      Social media application TikTok integrates social media with e-commerce through

4    its TikTok Shop platform allowing for in-app purchases through the TikTok app. This evolution

5    of e-commerce through social media is referred to as "social commerce."

6          39.      Sales through TikTok Shop have rapidly grown into one of the most influential

7    platforms for consumer purchasing through social commerce.

8          40.      In 2024, the TikTok app reached 1.6 billion users, a 6.1% increase from the

9    previous year.[20]

10          41.      The U.S. operation of TikTok Shop launched in September of 2023 and as of 2024,

11    has attracted 47 million U.S. based shoppers to the TikTok app, with U.S. users spending on

12    average of $32 million every day.[21]

13          42.      Upon information and belief, many of the third-party merchants that have user

14    accounts to sell on TikTok Shop, like Defendants, are located in China (or Hong Kong) and ship

15    using a direct-to-consumer model, shipping directly from manufacturers in China (or Hong Kong)

16    to U.S. buyers.

17          43.      Defendants are located in China and, upon information and belief, conduct their

18    business in the U.S. and other countries by means of their user accounts, on their merchant

19

20    _____

21

22    [19] Brittney Myers, *Some Shoppers Are Fleeing Amazon Because of Counterfeit Goods*, THE ASCENT (Jan. 17, 2023), https://www.fool.com/the-ascent/personal-finance/articles/some-shoppers-are-fleeing-amazon-because-ofcounterfeit-goods/; *see* Brendan Case, *Amazon, Third-Party Sellers Spur Fake Goods, Group Says*,
23    BLOOMBERG (Oct. 13, 2021), https://www.bloomberg.com/news/articles/2021-10-13/amazon-third-party-sellers-spur-counterfeit-boomgroup-says#xj4y7vzkg.

24    [20] Mansoor Iqbal, *TikTok Revenue and Usage Statistics (2025)*, BUSINESS OF APPS (Feb. 25, 2025)
25    https://www.businessofapps.com/data/tik-tok-statistics/.

    [21] *TikTok Shop Statistics,* CAPITAL ONE SHOPPING (Mar. 1, 2025) https://capitaloneshopping.com/research/
26    tiktokshopping-statistics/#:~:text=%2432%20million%20per%20day%20shopping

Case No. 25-cv-1961

Practus LLP
11300 Tomahawk Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1    storefronts on AliExpress, Amazon and TikTok Shop, via Defendants' Websites, as well as

2    potentially yet undiscovered additional online marketplace platforms.

3        44.    Through these merchant storefronts and Defendants' Websites, Defendants

4    exclusively offer for sale and sell Infringing Products and target and ship such products to

5    customers located in the U.S., including Washington, and throughout the world.

6        45.    Defendants are not strangers to patent infringement litigation and are known

7    intellectual property infringers, as detailed in the Wang Declaration accompanying the

8    accompanying the *ex parte* Emergency Motion for Temporary Restraining Order.

9        46.    Given Defendants past conduct in avoiding paying prior district court intellectual

10   property infringement judgments, it is imperative that Defendants' assets are identified and

11   restrained to avoid evading payment of any judgment for intellectual property infringement as well

12   as covertly transfer its assets to avoid defeating the monetary remedies available to Plaintiff and

13   perpetuate its inequitable patent infringing activities.

14       47.    Plaintiff requires the safeguards of a sealed complaint and temporary restraining

15   order against continued infringements by the foreign defendants in this lawsuit for many reasons:

16       48.    One or more of the Defendants' past avoidance of prior intellectual property

17   infringement judgments in the United States will only continue and be repeated in this lawsuit;

18       49.    Defendants' concealed, overlapping, and/or conflicting identities increase the ease

19   and flexibility of using the online marketplaces to facilitate the improper liquidation of defendants'

20   infringement profits and other ill-gotten gains to different and newly concealed identities;

21   Defendants' immediate covert withdrawal of their illegally obtained profits from their platforms'

22       50.    Defendants' immediate shuttering of their infringing storefronts only to re-open

23   those store fronts under further confusing merchant storefronts with additional fictitious addresses

24   and branding to continue their infringing conduct while keeping their infringing gains away from

25   access by the true intellectual property rights holder.

26

Practus LLP
11300    Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1    This above-identified abuses capable of being committed by Defendants by virtue of their use of

2    online marketplaces and their foreign and domestic merchant storefronts has been referred to as

3    "an endless game of whack-a-mole against countless anonymous scofflaws who blatantly and

4    shamelessly violate Rights Owners' IP."[22]  It is for at least the above reasons that Plaintiff requires

5    the Complaint to be sealed, the Defendants' assets frozen, and that service of the Complaint and

6    any accompanying restraints be made via efficient communication means, including using

7    Defendants' prior counsel and their multivarious company email addresses supplied on the product

8    packaging.

9    <u>**Defendants' Wrongful And Willfully Infringing Conduct**</u>

10       51.    Defendants are currently offering for sale and/or selling Infringing Products

11   through their user accounts, websites, and merchant storefronts, accepting payment for Infringing

12   Products in U.S. Dollars, and providing shipping and has shipped Infringing Products to the U.S.,

13   including to customers located in Washington. Plaintiff's findings are supported by Defendants'

14   Infringing Listings, the checkout pages for Infringing Products, and the test purchases made of

15   Infringing Products. Screenshots of the checkout pages and order confirmations for such Infringing

16   Products purchased from Defendants' Merchant Storefronts on Amazon reflecting that the

17   Defendants ship the Infringing Products to the Washington Address, which are included in Exhibit

18   E..

19       52.    In addition, Defendants were on constructive notice of the D312 Patent by

20   Plaintiff's marking of its patented products at least as early as February 21, 2019.

21       53.    Upon information and belief, Defendants had actual knowledge of Plaintiff's

22   ownership of the D312 Patent, of the fame, popularity, and success of the PicassoTiles products

23   and the D312 Patented designs contained within the same and willfully chose to offer for sale and

24

---

25   [22] Elizabeth Banegas, *SCHEDULE "A" CASES. NOT SAD AT ALL*, 65 IDEA 107 (2024) (chrome
     extension://efaidnbmnnnibpcajpcglclefindmkaj/https://law.unh.edu/sites/default/files/media/2024-
26   12/nhidea_65n1_elizabeth-banegas.pdf).

Practus LLP
11300      Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1   continue selling Infringing Products. Defendants have been engaging in infringing actions, as

2   alleged herein, knowingly, and intentionally, or with reckless disregard or willful blindness to

3   Plaintiff's rights.

4       54.     Each of the Defendants' products is virtually identical copy and counterfeit of

5   Plaintiff's D312 Patent practicing products and D312 Patent design claim, as set forth in the charts

6   included in Exhibit F..

7       55.     Each of the Defendants' products was offered for sale to purchasers in this judicial

8   district, capable of being ordered by purchasers in this judicial district, shipped to purchasers in

9   this judicial district, and were ordered, purchased, and shipped to a purchaser in this Judicial

10  District as set forth in the charts included in Exhibit G., Appendix 14.

11      56.     Plaintiff is forced to file this action to combat the harm to its business caused by

12  Defendants' infringement of the D312 Patent, as well as to protect its immense investments in its

13  own patented products, customer goodwill, and prevent unknowing consumers from purchasing

14  the Infringing Products sold by Defendants mistaking them to be under license or authority from

15  Plaintiff.

16                          **CAUSE OF ACTION**

17                     **FIRST CAUSE OF ACTION**

18      **(Infringement of United States Design Patent No. D789,312)**

19                          **[35 U.S.C. § 271]**

20      57.     Plaintiff repleads and incorporates by reference each and every allegation set forth

21  in the preceding 56 paragraphs as if fully set forth herein.

22      58.     Without Plaintiff's authorization or consent, and with knowledge of Plaintiff's

23  well-known and prior rights in the D312 Patent, Defendants intentionally manufactured, imported,

24  exported, advertised, marketed, promoted, distributed, offered for sale and/or sold their Infringing

25  Products to the purchasing public in direct competition with Plaintiff, and has acted with reckless

26  disregard of Plaintiff's rights in and to the D312 Patent through such activities.

Practus LLP
11300    Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1      59.     As demonstrated by Exhibit F, an ordinary observer, giving such attention as a

2  purchaser usually gives to magnetic bricks, would find the design claimed by the D312 Patent to

3  be substantially the same as each Infringing Product depicted in Exhibit F because the resemblance

4  of the Infringing Product to the D312 Patent's claimed design is such as to deceive such an

5  observer to purchase the Infringing Product supposing it to be Plaintiff's D312 Patent design.

6      60.     Because the designs of each of the Infringing Products are so substantially similar

7  to those claimed that they would deceive an ordinary observer to purchase the Infringing Products

8  due to its similarity and likeness to Plaintiff's patented products and the D312 Patent designs they

9  embody, each of the Infringing Products infringe Plaintiff's D312 Patent.

10     61.     As a direct and proximate consequence of Defendants' infringement of the D312

11  Patent, Defendants have caused substantial monetary loss and irreparable harm and damage to

12  Plaintiff, its business, its reputation, and impairment of its valuable rights in and to the D312

13  Patent. Due to the flood of infringing products in the marketplace and clear passing off of

14  infringing product as though it is of the same quality and kind as that manufactured, offered for

15  sale, and sold by Plaintiff under the D312 Patent, Plaintiff is left with no adequate remedy at law.

16  Unless immediately enjoined, Defendants will continue to cause such substantial and irreparable

17  injury, loss, and damage to Plaintiff through infringement of Plaintiff's exclusive rights in and to

18  the D312 Patent.

19     62.     Based on Defendants' actions as alleged herein, Defendants have had actual

20  knowledge of the D312 patent, or willfully blinded themselves from knowledge of the same, and

21  their infringement thereof and did nothing to stop its blatant use, copying, and infringement of

22  Plaintiff's intellectual property. Accordingly, each of Defendants' concealed and rampant

23  infringement of the D312 Patent is willful, and Plaintiff is entitled to treble damages as provided

24  by 35 U.S.C. § 284.

25                     **DEMAND FOR A JURY TRIAL**

26     63.     Plaintiff respectfully requests a jury trial in this action on all issues so triable.

Practus LLP
11300     Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1 **PRAYER FOR RELIEF**

2       Based on the foregoing, Plaintiff prays for the following relief against each Defendant:

3       A.     Judgment in Plaintiff's favor against Defendants on all causes of action alleged

4 herein;

5       B.     A temporary restraining order curtailing each Defendants' infringing activities and

6 freezing all assets and use of merchant storefronts to continue infringing the D312 Patent;

7       C.     A preliminary and permanent injunction to enjoin Defendants, their agents,

8 servants, employees, attorneys, successors and assigns, and all persons, firms, and corporations

9 acting in concert with them, including distributors, customers, from making, using, offering for

10 sale, or selling processes and products made thereby and which are claimed in the D312 Patent;

11       D.     A finding that Defendants' infringement of the D312 Patent to be willful;

12       E.     An injunction against Defendants directing the removal and destruction of all

13 unauthorized products and combinations of products made using the D312 Patent designs;

14       F.     An Order mandating Defendants to pay Plaintiff compensatory damages based on

15 evidence submitted at trial with interest at the highest rate allowable by law;

16       G.     An Order mandating Defendants to pay Plaintiff consequential, exemplary, and

17 actual damages or disgorgement of Defendants' profits unjustly obtained based on competent and

18 admissible evidence at trial with interest at the highest rate allowable by law;

19       H.     An Order mandating Defendants to pay Plaintiff enhanced damages;

20       I.     An Order mandating Defendants to pay Plaintiff's reasonable attorneys' fees and

21 allowable court costs and expenses; and

22       J.     All other such relief to Plaintiff under law and equity as the Court deems just and

23 proper.

24

25

26

Case No. 25-cv-1961

18

Practus LLP
11300     Tomahawk
Creek Pkwy, Ste. 310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

DATED this 10th day of October 2025.

By _____

Tim J. Billick, WSBA No. 46690
Practus LLP
E-mail:  tim.billick@practus.com
600 First Ave, Ste.102
Seattle, WA  98104
Ph. 206-844-6539


Joseph A. Farco
(Pro Hac Vice Motion To Be Filed)
BOCHNER PLLC
1040 6th Avenue, 15th Floor
New York, NY 10018
Tele. No.: 646-971-0685
JFarco@bochner.law

Attorneys for Plaintiff, Laltitude LLC

Case No. 25-cv-1961

19

Practus LLP
11300     Tomahawk
Creek  Pkwy,  Ste.  310
Leawood, KS 66211
Ph. (240) 206-60627
Fax. (626)-466-9014