1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

LALTITUDE LLC,

Plaintiff(s),

v.

INDIVIDUALS, PARTNERSHIPS AND
UNINCORPORATED ASSOCIATIONS
IDENTIFIED IN SCHEDULE A,

Defendant(s).

CASE NO. C25-1961-KKE

ORDER ON MOTION FOR TEMPORARY
RESTRAINING ORDER

This patent infringement matter comes before the Court on Plaintiff Laltitude LLC's ("Laltitude") ex parte motion for a temporary restraining order ("TRO"). Dkt. No. 3. Plaintiff's TRO requests that the Court: (1) enjoin Defendants from selling, distributing, or manufacturing allegedly infringing products; (2) freeze Defendants' assets earned from their sales of the allegedly infringing products; (3) afford Plaintiff expedited discovery "to inspect and copy" Defendants' records including financial accounts; (4) grant it permission to serve Defendants by email; and (5) order Defendants to show cause as to why a preliminary injunction should not issue on the return date. Dkt. No. 3 at 2–3. For the reasons below, the Court denies Laltitude's motion for ex parte injunctive relief, denies Laltitude's request for expedited discovery, grants Laltitude's motion for alternative service, and denies Laltitude's request for an order to show cause.

## I.    BACKGROUND

Laltitude is the owner and sole authorized manufacturer of products embodying U.S. Design Patent No. D789,312 F3 ("D312 patent"), entitled "Single Magnetic Brick." Dkt. No. 1 at 1, *id.* ¶¶ 2, 13. Laltitude sells products embodying its D312 patent through various online retailers, primarily through products sold under brand names PicassoTiles and EverPlay. Dkt. No. 1 ¶¶ 2, 21; Dkt. No. 4 ¶ 3. The D312 patent "is directed to a clearly unique ornamental design for a single magnetic brick," which "has created a new paradigm for the magnetic building brick toy industry." Dkt. No. 1 ¶¶ 18, 23. Since 2015, Laltitude has achieved gross revenues "in the mid to high multiple millions of dollars" from D312 patent product sales. *Id.* ¶ 22.

Defendants The Individuals, Partnerships, and Unincorporated associations identified in Schedule A[1] ("Defendants"), are individuals or companies "of unknown makeup" located in China, and sell products that allegedly infringe the D312 patent through online storefronts such as AliExpress, Amazon, and TikTok Shop, as well as on their own websites. *Id.* ¶¶ 3, 5, 43, 44. Laltitude alleges that Defendants are "known intellectual property infringers" who direct their business activities at consumers in Washington state. *Id.* ¶¶ 10, 45. Laltitude further alleges that Defendants have "overlapping[] and/or conflicting identities," and, as a means of "continu[ing] their infringing conduct," "shutter[]" then "re-open" their online store-fronts and use "fictitious addresses." *Id.* ¶¶ 49–50.

On October 10, 2025, Laltitude simultaneously filed its Complaint for a single claim of infringement of the D312 patent and moved this Court for a temporary restraining order ("TRO"). Dkt. Nos. 1, 3. In support of the Motion, Laltitude filed a redacted declaration of Howard Wang,

---

[1] Plaintiff lists 11 Defendants. *See* Dkt. 1-7 at 1–14. Plaintiff includes a seller alias for Defendants 1–10: Soyee, SYKJ INC, WL-AMZ, Norline, YXIN Direct, kiddone, bbyl, YL-amz, Loovio inc, and Toyology. *Id.* Defendant 11 lacks a seller alias or any unifying identifier and makes sales through Amazon under brand names "soyee," "Coodoo," "Wotolit," and "Gooidea." *Id.* at 14.

the inventor of the D312 patent. *See* Dkt. No. 4. Attached to the redacted declaration is one exhibit, which also contains redactions. Dkt No. 4. Laltitude also filed a sealed ex parte unredacted version of the Wang Declaration, attaching two additional exhibits. *See* Dkt. No. 6.

On October 13, 2025, counsel for 10 of the 11 Defendants entered an appearance and filed a notice of intent to oppose the Motion for TRO. Dkt. Nos. 8, 9. Defendants' notice stated that the parties were attempting to stipulate to a briefing schedule, and that while these Defendants had notice of Plaintiff's Motion, they had not been served with the complete ex parte materials filed in support of it. Dkt. No. 9 at 2. On October 14, 2025, Defendants informed the Court that the parties were unable to agree on a briefing schedule for the pending TRO motion and requested that the Court hold in abeyance or extend the deadline for Defendants' response until Plaintiffs serve Defendants with the complete unredacted record in support of their motion.

The Court finds this matter appropriate for decision without oral argument. *See* Fed. R. Civ. P. 78; Local Rules W.D. Wash LCR 7(b)(4).

## II.   ANALYSIS

The Court has federal question jurisdiction because this case arises under federal law, 35 U.S.C. § 271.

### A.   Plaintiffs' Motion for a Temporary Restraining Order is Denied.

Plaintiff moves for an ex parte TRO to enjoin Defendants from continuing to sell the allegedly infringing products and freeze Defendants' assets associated with particular email addresses and seller aliases. Dkt. No. 3 at 2–3. At a high level, Plaintiff argues that Defendants' "offshore infringing activities," and "past acts of evading judgments" warrant the ex parte injunctive relief sought here. Dkt. No. 3 at 3. Though some Defendants have now appeared in this action, they have not been served with the entirety of the materials provided in support of Plaintiff's motion, and thus lack notice of the complete bases for Plaintiff's motion. Accordingly,

the Court first applies the standard for ex parte relief before addressing the *Winter* factors for temporary injunctive relief.

For the reasons detailed below, the Court denies Plaintiff's motion.

1. Legal Standard for Ex Parte Relief

Motions for TROs and preliminary injunctions are governed by "substantially identical" standards. *Stuhlbarg Int'l Sales Co. v. John D. Brush & Co.*, 240 F.3d 832, 839 n.7 (9th Cir. 2001). A TRO is an "extraordinary remedy never awarded as of right." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). A plaintiff seeking a TRO must establish (1) a likelihood of success on the merits; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) a balancing of equities tips in favor of a TRO; and (4) an injunction is in the public interest. *Id.* at 20. To obtain injunctive relief, "plaintiffs must establish that irreparable harm is likely, not just possible, in order to obtain a preliminary injunction." *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011).

TROs differ from preliminary injunctions in that courts "may issue a temporary restraining order without written or oral notice to the adverse party." Fed. R. Civ. P. 65(b)(1). But "[m]otions for temporary restraining orders without notice to and an opportunity to be heard by the adverse party are disfavored and will rarely be granted." LCR 65(b)(1). A court may issue a TRO "only if specific facts in an affidavit or a verified complaint clearly show that immediate and irreparable injury, loss, or damage will result to the movant before the adverse party can be heard in opposition; and the movant's attorney certifies in writing any efforts made to give notice and the reasons why it should not be required." Fed. R. Civ. P. 65(b)(1). These restrictions "reflect the fact that our entire jurisprudence runs counter to the notion of court action taken before reasonable notice and an opportunity to be heard has been granted both sides of a dispute." *Granny Goose Foods, Inc. v. Teamsters*, 415 U.S. 423, 439 (1974).

1   Accordingly, "very few circumstances justify[] the issuance of an ex parte TRO." *Reno*

2   *Air Racing Ass'n., Inc. v. McCord*, 452 F.3d 1126, 1131 (9th Cir. 2006). Courts in the Ninth

3   Circuit have awarded ex parte injunctive relief in two general circumstances. *Reno Air*, 452 F.3d

4   at 1131. First, "where notice to the adverse party is impossible either because the identity of the

5   adverse party is unknown or because a known party cannot be located in time for a hearing." *Reno*

6   *Air*, 452 F.3d at 1131. Second, where notice can be given to the adverse party, courts have

7   recognized "a very narrow band of cases in which ex parte orders are proper because notice to the

8   defendant would render fruitless the further prosecution of the action." *Reno Air*, 452 F.3d at 1131

9   (citing *Am. Can Co. v. Mansukhani*, 742 F.2d 314, 322 (7th Cir. 1984)). Regarding the second

10  category, the *Reno Air* court held that ex parte injunctive relief may issue when a plaintiff shows

11  that an alleged infringer has history of violating court orders and disposing of evidence. 452 F.3d

12  at 1131 (a mere "assert[ion] that the adverse party would dispose of evidence if given notice" is

13  insufficient to support granting ex parte TRO).

14      2.  Laltitude fails to satisfy the requirements for an ex parte TRO.

15      Laltitude argues that one Defendant's ("Defendant Soyeeglobal") failure to pay on a

16  judgment entered against it in a single lawsuit in the Central District of California supports *ex*

17  *parte* relief and asset restraint here. Dkt. No. 3 at 4; Dkt. No. 4 at ¶¶ 68–70; *see also* Am. Final

18  Judgment, *Laltitude LLC v. Soyeeglobal et al.*, 2:22-cv-03539-PSG-RAO, Dkt. No. 84 (C.D. Cal.

19  Apr. 30, 2025). But a single instance of failure to pay on a judgment by one of multiple Defendants

20  does not support ex parte injunctive relief. *See Reno Air*, 452 F.3d at 1131; *cf. Kyko Glob., Inc. v.*

21  *Prithvi Info. Sols., Ltd.*, No. 13-CV-1034, 2013 WL 12173381, at * (W.D. Wash. June 19, 2013)

22  (granting ex parte TRO motion where the plaintiffs offered ample "evidence indicat[ing]

23  Defendants ha[d] engaged in a pattern and practice of creating fictitious entities for the appearance

24  of imitating legitimate business transactions and companies.").

Moreover, on this record, it is unclear that Defendant Soyeeglobal violated a court order or is attempting to avoid payment to Laltitude.  As of the date of this order, fewer than six months have passed since the April 30, 2025 judgment, that order did not specify a deadline by which Defendant was required to pay, and Soyeeglobal appeared in the litigation to contest entry of default judgment against it.  *See* Mot. Set Aside Default Judgment, *Laltitude LLC*, 2:22-cv-03539-PSG-RAO, Dkt. No. 63 (C.D. Cal. July 30, 2024).  Further, none of the cases Plaintiff cites discuss immediate *and* irreparable harm required in the context of an ex parte TRO.  *See* Dkt. No. 3 (citing *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1344–45 (Fed. Cir. 2013) (irreparable harm discussed in the context of a permanent injunction); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012) (same); *Stuhlbarg Int'l Sales Co.*, 240 F.3d at 841 (discussing irreparable harm in the context of a preliminary injunction and declining to separately review a previously-issued TRO)).  Accordingly, Plaintiff has not shown entitlement to an ex parte injunction restraining Defendants' selling activities at this time.

Plaintiff also asks the Court to restrain Defendants' assets.  Dkt. No. 3 at 3.  Plaintiff argues that "[g]iven Defendant Soyeeglobal's past conduct in avoiding paying prior district court intellectual property infringement judgments," asset restraint is necessary to prevent Defendants from "attempting to again evade payment" or "mov[ing] their assets and accounts." Dkt. No. 4 ¶ 70, Dkt. No. 3 at 9–10.

"A party seeking an asset freeze must show a likelihood of dissipation of the claimed assets, or other inability to recover monetary damages, if relief is not granted." *Johnson v. Couturier*, 572 F.3d 1067, 1085 (9th Cir. 2009) (finding asset freeze appropriate where Defendant convinced fund directors and trustees to divert nearly $35 million from employees' stock plan into his personal bank account).  Laltitude has offered no facts in support of its contention, and a "conclusory assertion that defendants will 'hide or move' … funds … if given notice is insufficient" to support

an ex parte asset freeze. *Zhu v. P'ships & Unincorp. Assocs. Identified on Sched. "A"*, No. 24-CV-03128-RS, 2024 WL 3282662, at *2 (N.D. Cal. June 4, 2024). "Were a single conclusory statement … about infringers sufficient to meet the dictates of Rule 65, then ex parte orders without notice would be the norm[.]" *Reno Air*, 452 F.3d at 1132.

Accordingly, Plaintiff's request for ex parte relief is denied.

3. <u>Laltitude Fails to Show Irreparable Harm.</u>

In addition to failing to meet the high standard for ex parte relief, Plaintiff likewise fails to meet the standard for a TRO with notice.

"The purpose of a TRO is to preserve the status quo and prevent irreparable harm until the Court can consider the appropriateness of a preliminary injunction." *Shenzhen Root Tech. Co. v. Chiaro Tech. Ltd.,* No. 2:23-CV-00631-JHC, 2023 WL 3937394, at *2 (W.D. Wash. May 17, 2023), *reconsideration denied*, No. 2:23-CV-00631-JHC, 2023 WL 3973487 (W.D. Wash. June 13, 2023). On this record, Laltitude fails to clearly show immediate irreparable harm. Laltitude claims business losses from alleged infringement of its patent, including loss of revenue, reputational harm, and goodwill. As evidence of irreparable harm, Laltitude relies on conclusory and self-serving testimony in the Wang declaration about potential lost relationships and damaged reputation arising from Defendants' alleged conduct. *See* Dkt. No. 4 ¶¶ 72-82 (describing general harms such as "loss of exclusivity"; "gradual loss of sales momentum due to the proliferation of Unauthorized Products"; "undermining [] reputation and goodwill"; "diverted sales" and "loss of quality control"). This evidence is insufficient to show impending, irreparable harm that warrants extraordinary injunctive relief. *Medcursor, Inc. v. Shenzen KLM Internet Trading Co*., No. 2:21-CV-02843-AB-AFM, 2021 WL 2024858, at *6 (C.D. Cal. Apr. 20, 2021) (citing *Am. Passage Media Corp. v. Cass Commc'ns*, Inc., 750 F.2d 1470, 1473 (9th Cir. 1985)). As noted above, this

is particularly true where Plaintiff seeks relief without complete notice to Defendants.  *See* Dkt. No. 6 (2 of 3 exhibits in support of the Wang declaration filed ex parte and under seal).

In the redacted Wang declaration, Plaintiff also argues that it will suffer irreparable harm by virtue of Defendants' mere knowledge of this action.  Dkt. No. 4 ¶ 81 ("If the Defendants discover the public nature of this action, then Laltitude's ability to obtain any meaningful relief against the infringers, which are all located overseas, is utterly destroyed.").  Given that 10 out of 11 Defendants have now appeared, Plaintiff's allegation of irreparable harm stemming from notice alone is moot.

This is not to suggest that Plaintiff's infringement claims are without merit, nor that they will be unable to show irreparable harm in the future.  As this Court and others have previously observed, reputational damage and loss of market share can constitute irreparable harm.  *See, e.g., Microsoft Corp. v. Motorola, Inc.*, 871 F.Supp.2d 1089, 1102 (W.D. Wash. 2012), *aff'd*, 696 F.3d 872 (9th Cir. 2012); *Zero Cloud One Intelligent Tech. (Hangzhou) Co. v. Flying Heliball LLC*, No. 2:24-CV-01699-JNW, 2024 WL 4665594, at *7 (W.D. Wash. Nov. 4, 2024) (collecting cases). That said, "[c]onclusory affidavits are insufficient to demonstrate irreparable harm." *Medcursor*, 2021 WL 2024858, at *3.  Because Plaintiff has not shown concrete and immediate harms sufficient to warrant extraordinary injunctive relief, the Court will deny Plaintiff's motion without prejudice.  *Shenzhen Root Tech.*, 2023 WL 3937394, at *3.

**B.    Laltitude's Request for Limited Expedited Discovery is Denied.**

Courts may authorize expedited discovery before a Rule 26(f) conference for the parties' and witnesses' convenience and in the interests of justice. Fed. R. Civ. P. 26(d).  In the Ninth Circuit, courts consider whether a plaintiff has shown "good cause" for expedited discovery. *Amazon.com, Inc. v. Wang Weiyuan*, No. 2:23-CV-00931-RSM, 2024 WL 992609, at *1 (W.D. Wash. Feb. 22, 2024).  "Good cause may be found where the need for expedited discovery, in

consideration of the administration of justice, outweighs the prejudice to the responding party." *Id.* at *1 (citing *Semitool v. Tokyo ElectronAm., Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. 2002)).

Laltitude argues that expedited discovery is necessary "to fully assess the scope and impact of Defendant's infringement notices." Dkt. No. 3 at 10. Based on the allegations in the complaint and motion, it is unclear that any "infringement notices" are at issue in this case. Plaintiff further argues generally that expedited discovery is needed because it "lacks line-of-sight into which distributors and resellers work in conjunction with the Defendants or may be sources for additional infringing products." *Id*. But Plaintiff follows this claim with the assertion that notice of this action will "undoubtedly result in [Defendants'] attempts to avoid facing consequences for their online infringing conduct." *Id.* Defendants have now appeared, and as noted above, the notice argument is moot. Without more, the Court finds that Plaintiff has failed to establish good cause for expedited discovery. As such, Plaintiff's motion is denied without prejudice. Plaintiff may renew its request to the extent appropriate in the course of these proceedings.

**C.    Laltitude's Request for Alternate Service is Granted.**

Laltitude also requests leave to serve Defendants through alternative means: namely, email. Dkt. No. 3 at 11–17.

Federal Rule of Civil Procedure 4(f)(3) allows for service through alternative means so long as it is ordered by the court, not prohibited by international agreement, and satisfies due process. *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1016–17 (9th Cir. 2002). District courts have discretion to determine when the "particularities and necessities of a given case require alternate service of process under Rule 4(f)(3)." *Id.* at 1016. To satisfy due process, any method of service directed by the Court "must be 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Id.* at 1016–17 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.,* 339 U.S.

306, 314 (1950)). "[W]ithin the Ninth Circuit, multiple courts have allowed alternative service by electronic communication to defendants located in China." *Rubie's Costume Co., Inc. v. Yiwu Hua Hao Toys Co., Ltd.*, No. 2:18-CV-01530-RAJ, 2019 WL 6310564, at *3 (W.D. Wash. Nov. 25, 2019).

Defendants are all located in China. Dkt. No. 3 at 11. Laltitude identified email addresses to serve Defendants Soyee, Coodoo[2], Norline, YXIN, WL-AMZ, SYKJ, Kiddone, IGIVI[3], and BBYL based on packaging obtained through test buys. Dkt. No. 3 at 12–15. Laltitude has proposed no email addresses for Defendants YL-amz, Loovio inc, Toyology, and unnamed Defendant 11. Dkt. No. 3 at 15; *see also* Dkt. No. 1 at 197–98 (Loovio inc, Toyology, and no seller alias are Defendant numbers 8, 9, 10, and 11 respectively). However, since the filing of Laltitude's motion, 10 of 11 Defendants have now appeared. It is unclear from Defendants' notice (Dkt. No. 9) whether these Defendants have been properly served, and/or whether service remains a contested issue.

Regardless, counsel for all named Defendants has appeared in this matter and there is no concern that these Defendants lack notice of this action. Defendants did not timely oppose Plaintiffs' motion for alternative service, despite having notice of the request and sufficient information on which to oppose it. Accordingly, in light of the harms alleged in this case and the exigencies apparent in this matter, the Court concludes that Laltitude may effect service of process through email service to the addresses identified in Plaintiff's motion. Plaintiff must then file proof of service on the docket.

---

[2] Coodoo is not listed as a Defendant in Schedule A, only as a "Brand Name" sold by Defendants Soyee, SYKJ INC, and WL-AMZ. *See* Dkt. No. 1 at 185–88.
[3] IGIVI is not listed as a Defendant in Schedule A, only as a "Brand Name" sold by Defendant kiddone. *See* Dkt. No. 1 at 191.

**D.    Laltitude's Request for an Order to Show Cause is Denied.**

Given that the TRO is denied, Laltitude's final request for an order to show cause "why a preliminary injunction should not issue on the return date," is denied.  Laltitude may move for a preliminary injunction once Defendants are served, and Defendants will be able to respond to any such motion on the schedule set forth in the Local Rules.  *See* LCR 7(d)(4).

## III.   CONCLUSION

Accordingly, the Court ORDERS that:

1) Laltitude's ex parte motion for injunctive relief to enjoin Defendants from selling, distributing, or manufacturing the allegedly infringing products is DENIED;

2) Laltitude's ex parte motion for asset restraint is DENIED;

3) Laltitude's request for expedited discovery is DENIED;

4) Laltitude's request for leave to effectuate service through alternative means is GRANTED;

5) Laltitude's request for an order for Defendants to show cause why a preliminary injunction should not issue on the return date is DENIED.

Dated this 15th day of October, 2025.

Kymberly K. Evanson
United States District Judge